IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY LEE KITE,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CV 17-158-BLG-TJC<br><br>**ORDER** |

On December 2, 2017, Plaintiff Timothy Lee Kite ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security (the "Commissioner") regarding the denial of Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (Doc. 1.) On March 5, 2018, the Commissioner filed the Administrative Record ("A.R.") (Doc. 8).

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for further administrative proceedings. (Doc. 13.) The motion is fully briefed and ripe for the Court's review. (Docs. 14-15.)

1

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court hereby finds Plaintiff's motion should be **GRANTED**, and the Commissioner's decision should be **REVERSED**.

I.  PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on December 17, 2014. (A.R. 161-62.) Plaintiff alleged he has been unable to work since July 17, 2014 due to his disabling condition. (A.R. 161.) The Social Security Administration denied Plaintiff's application initially on June 1, 2015, and upon reconsideration on November 3, 2015. (A.R. 74-84; 85-98.)

On December 18, 2015, Plaintiff filed a written request for a hearing. (A.R. 107-08.) Administrative Law Judge Michael A. Kilroy (the "ALJ") held a hearing on November 10, 2016. (A.R. 37-73.) On January 25, 2017, the ALJ issued a partially favorable decision finding Plaintiff was disabled from July 17, 2014 through April 28, 2016, but had medically improved to the point he was no longer disabled as of April 29, 2016. (A.R. 19-32.)

Plaintiff requested review of the decision, and on October 6, 2017, the Appeals Council denied Plaintiff's request for review. (A.R. 1-6.) Thereafter, Plaintiff filed the instant action.

/ / /

/ / /

## II. LEGAL STANDARDS

### A. Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir.2006) (quoting *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir.1989)). The Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which the ALJ did not rely. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

Further, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B. Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C.

4

§§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

Once a claimant has been found to be disabled, a presumption of continuing disability arises in his favor. *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985). The Commissioner "bears the burden of producing sufficient evidence to rebut this presumption of continuing disability." *Id.* Disability benefits can be terminated if: (1) there has been medical improvement in the claimant's impairments and (2) the medical improvement is related to the claimant's ability to work. 20 C.F.R. § 404.1594(a). Even where medical improvement related to the claimant's ability to work has occurred, the Commissioner must also show that the claimant is currently able to engage in substantial gainful activity before finding he is no longer disabled. *Id.*

Medical improvement is defined as "any decrease in the medical severity" of the claimant's impairments, and "is determined by a comparison of prior and

current medical evidence which must show that there have been changes (improvement) in the symptoms, signs, or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1). In "closed period" cases, where the ALJ finds in a single decision that the claimant was disabled for a closed period of time but has since medically improved, the ALJ "should compare the medical evidence used to determine that the claimant was disabled with the medical evidence existing at the time of asserted medical improvement." *Attmore v. Colvin*, 827 F.3d 872, 874 (9th Cir. 2016).

An eight-step evaluation process is used to determine whether a claimant continues to be disabled. 20 C.F.R. § 404.1594(f). Under this process, the Commissioner determines: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments which meets the criteria of a listed impairment; (3) whether medical improvement has occurred; (4) whether the medical improvement is related to the claimant's ability to do work; (5) whether an exception to medical improvement applies; (6) whether all the current impairments are severe; (7) what the claimant's residual functional capacity is and whether the claimant can perform past relevant work; and (8) whether other work exists in significant numbers that the claimant can perform. *Id.*

/ / /

## III. FACTUAL BACKGROUND

### A. The Hearing

A hearing was held before the ALJ in Billings, Montana on November 10, 2016. (A.R. 37-73.) Plaintiff testified that he had undergone multiple surgeries, including a cervical fusion in July 2014, a second cervical fusion in August 2015, and surgery on his right shoulder in February 2016. (A.R. 47-48.) He stated that he had a fourth surgery scheduled for the following week to repair his left shoulder. (A.R. 51.)

As to his physical limitations, Plaintiff testified that he is able to move his head up and down a little bit, but has very limited ability to turn side-to-side. (A.R. 48.) He experiences headaches almost daily, and has pain radiating to his right shoulder and down his right arm. (A.R. 49.) His ability to lift with the right arm is very limited, and reaching is difficult. (A.R. 50.) He is not able to open jars or type. (*Id.*) He also stated his pain affects his ability to sit, stand and walk. (A.R. 52-53.) He can sit for about a half an hour, only stand for 15 minutes, and walk about 300 yards. (A.R. 53.) Plaintiff stated that his pain interrupts his ability to sleep, and he averages only 2-3 hours of sleep per night. (A.R. 55.)

Plaintiff stated he deals with his pain by packing himself in ice, taking pain pills (which make him sick), and sitting in a recliner most of the day. (A.R. 52, 55.) He indicated he rarely has good days, and his pain is present "pretty much all

8

the time." (A.R. 52.)  With regard to the right shoulder surgery in February 2016, Plaintiff testified that it was not successful in relieving his pain.  (A.R. 51.)

As to his activities, Plaintiff testified that he lives with his wife, and his ability to assist around the home is very limited.  (A.R. 44, 58.)  He indicated he only drives once a week, for about two miles.  (A.R. 48-49.)  He used to golf, bowl, and play pool, but can no longer do those activities.  (A.R. 52.)  He said it is too painful to mow the lawn.  (A.R. 52.)  He goes to Walmart once every two weeks for about 45 minutes and goes to dinner with friends on Friday nights.  (A.R. 59.)  After these outings, he ends up back in his recliner icing his neck and shoulder.  (A.R. 64.)  He no longer goes to physical therapy, and is not currently doing home exercises because he felt "maxed out."  (A.R. 61.)

Plaintiff stated that on a typical day he gets up at 5:00 a.m. and then spends a couple of hours sitting in his recliner either watching television or dozing off.  (A.R. 55-56.)  He gets dressed around 9:00 a.m.  He is able to manage his own personal care, but it takes him longer and he is not able to shave very well because he has to use his left hand.  (A.R. 57.)  He spends the rest of the day in his recliner, with a break for lunch and dinner.  (A.R. 57-58.)  Aside from watching television, he talks to his children on the phone.  (A.R. 60.)

### B. Medical Evidence[1]

    a. *Anthony W. Roccisano, D.O.*

In November 2013, Plaintiff saw Dr. Roccisano for evaluation of right arm and neck pain. (A.R. 587-91.) At that point, Plaintiff had been having problems for almost a year, following a car accident. (A.R. 587.) Plaintiff reported weakness in his right arm around his shoulder, and rated his neck pain at 7/10 and arm pain at 8/10. (*Id.*) Plaintiff indicated physical therapy had not helped, and that he did not get much relief from 2 epidurals. (A.R. 588.) Dr. Roccisano noted Plaintiff had a lot of pain with rotation and from any manipulation of his shoulder. (A.R. 590.) He also noted that an MRI from March 2013 showed severe disc degeneration from C3-7 with severe stenosis at C3-4 and C4-5. (*Id.*) Dr. Roccisano determined Plaintiff had multi-level cervical stenosis and a possible right rotator cuff tear or intra-articular pathology. (*Id.*) He did not find Plaintiff to be a good candidate for cervical surgery at that time, and referred him for evaluation by a shoulder specialist. (A.R. 591.)

In April 2014, Dr. Roccisano noted Plaintiff was not improving. (A.R. 580.) Plaintiff's pain was still at a level 7 in his neck and 6 in his arm. (*Id.*) At that

---

[1] The administrative record includes Plaintiff's medical records from several health care providers. The Court has summarized only those records that are relevant to the specific issues presented for review.

point, Dr. Roccisano stated he did not think Plaintiff's arm pain would improve without some sort of surgery. (A.R. 581.) In July 2014, Dr. Roccisano indicated Plaintiff had failed medical management, and had elected to undergo a four-level anterior cervical discectomy and fusion. (A.R. 579.) The surgery was performed on July 18, 2014. (A.R. 592-93.)

In a follow-up visit on August 12, 2014, Plaintiff reported his overall pain was improving, but he was still experiencing weakness in his right arm and physical therapy was not helping. (A.R. 561.) He rated his neck pain at 5/10 and arm pain at 3/10. (*Id.*) Through September and October 2014, Plaintiff continued to have weakness in his right arm. (A.R. 547-48; 519-20.) In November 2014, Dr. Roccisano referred Plaintiff for a subacromial injection on the right side to address his persistent pain and limited motion. (A.R. 509.)

In December 2014, Dr. Roccisano noted Plaintiff was having headaches, which were likely related to C2-3 facet arthrosis. (A.R. 501.) Dr. Roccisano also noted that x-rays showed that his C6-7 level had collapsed a little bit, and should be monitored for non-union. (A.R. 502.)

In February 2015, Plaintiff reported he continued to have weakness in his right arm, and was experiencing pain in the left side of his neck. (A.R. 498.) By March, 2015, he was doing about the same. (A.R. 492.) At that time, he rated his neck pain at 8/10 and arm pain at 9/10. Dr. Roccisano noted the C6-7 level

11

appeared to have collapsed a little more. (A.R. 493.)

In July 2015, Plaintiff had an updated CT scan of his cervical spine, which showed there was an incomplete fusion at C5-6 and C6-7. (A.R. 739.) Dr. Roccisano recommended that Plaintiff undergo a second cervical surgery. (A.R. 749.) At that point, Plaintiff was reporting his pain level was at 8/10. (A.R. 748.)

On August 17, 2015, Plaintiff underwent a C5-7 posterior fusion and right C4-5 and left C2-3 foraminotomy. (A.R. 752-53.) Six weeks later, Plaintiff reported he may be getting a little better, but continued to have pain in his neck (9/10) and right shoulder (6/10). (A.R. 758.)

   b. *James Elliot, M.D.*

On January 1, 2016, Plaintiff saw Dr. Elliot for a second opinion regarding his persistent right shoulder pain. (A.R. 815-17.) Plaintiff reported that he continued to have extensive pain in his shoulder after his cervical surgeries. (A.R. 815.) Plaintiff indicated his pain was a level 9/10. (A.R. 817.) Dr. Elliot noted that it was difficult to assess whether the pain was caused from the shoulder itself or his cervical spine. (A.R. 815-17.) Upon examination, Dr. Elliot noted weakness and pain with motion of the shoulder. (A.R. 817.) But he noted that there was only minimal pain on cross-body reach. (*Id.*) Dr. Elliot performed a subacromial injection and ordered an MRI. (*Id.*)

In a follow-up visit in February 2016, Dr. Elliot noted Plaintiff's condition was unchanged. (A.R. 818-20.) Dr. Elliot reviewed Plaintiff's MRI and stated he did not have a full-thickness rotator cuff tear or obvious labral pathology, but there was significant changes of the a.c. joint. (A.R. 819.) Dr. Elliot thought arthroscopic surgery may give Plaintiff some pain relief, but stated that it would not improve his shoulder strength. (A.R. 819-20.)

On February 24, 2016, Plaintiff underwent arthroscopic surgery on his right shoulder. (A.R. 861.) Dr. Elliot noted the goal of the surgery was pain relief, and not improved function. (*Id.*) In March 2016, Plaintiff reported feeling improvement with resting pain, and indicated his pain level was 5/10. (A.R. 852.)

On April 28, 2016, Dr. Elliot stated plaintiff was getting some significant pain relief. (A.R. 838.) He indicated Plaintiff had no pain with cross-body reach, and Plaintiff reported he had days without pain. (*Id.*) Plaintiff also reported, however, that he still had "days when the pain is extensive, equal to the level he was having preoperatively." (*Id.*) He also indicated that his pain at the time of examination was a level 8/10. (*Id.*)

In June 2016, Plaintiff reported that he had recently felt a large pop in his neck and had increased pain. (A.R. 829.) He indicated his pain was a level 5/10. (A.R. 830.) Dr. Elliot stated he thought some of Plaintiff's pain was improved and

13

made sleep a little easier, but that Plaintiff's major issues continued to be related to his cervical spine. (A.R. 831.)

In September 2016, Plaintiff returned to see Dr. Elliot due to pain in his left shoulder. (A.R. 826-27; 823-24.) Plaintiff reported he injured his shoulder when helping his wife put together a bed frame. (A.R. 826.) Plaintiff indicated his pain was a level 6/10. (A.R. 824, 827.)

      c.    *Gwenna Peters, PT*

Plaintiff saw physical therapist Gwenna Peters following his first and second cervical spine surgeries. (A.R. 495-97; 504-508; 511-518; 522-546; 550-560; 564-75; 760-764.) Plaintiff consistently reported pain varying from a level 4/10 to 8/10. (*Id.*)

      d.    *Lindsay Weinberg, PT, DPT*

Plaintiff saw physical therapist Lindsay Weinberg following the surgery on his right shoulder. (A.R. 832-837; 842-851; 854-860.) At his initial evaluation with Ms. Weinberg in March 4, 2016, Plaintiff's chief complaint was pain at rest and with any form of movement. (A.R. 858.) At that time, Plaintiff reported his pain was at a level 8/10, and at best it would drop to a 7/10. (A.R. 858.) On March 9, 2016, Plaintiff reported he was "sore as hell." (A.R. 856.) In late March, Plaintiff reported he had increased neck and shoulder pain. (A.R. 848.) On April

13, 2016, Plaintiff's shoulder was "sore but moving better." (A.R. 844.) A week later, his shoulder was still sore. (A.R. 842.)

On April 28, 2016, Ms. Weinberg noted Plaintiff's "[s]houlder not getting much stronger, but feeling okay." (A.R. 836.) She further noted that Plaintiff "[h]as moments where it really aches and then will be fine. Icing." (*Id.*)

At his next visit on May 5, 2016, his shoulder "was more sore." (A.R. 834.) The following week he reported waking up "in increased pain" and was "very sore." (A.R. 832.)

### C. The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 17, 2014. (A.R. 23.) Second, the ALJ found that Plaintiff has the following severe impairments: "cervical spine disorder status/post 4-level fusion surgery and subsequent non-union repair surgery and bilateral shoulder dysfunction status/post right shoulder surgery." (*Id.*) Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. (A.R. 25.) Fourth, the ALJ stated that from July 17, 2014 through April 28, 2016, Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except, with both hands, he can push, pull, lift, or carry 10 pounds

15

occasionally and less than 10 pounds frequently, but with his right upper extremity, he can push, pull, lift, or carry no more than 2 pounds. Bilaterally, he can seldom (less than occasionally) reach overhead, and he can only lift 1 pound or exert 1 pound of pressure while doing so. In an 8-hour workday, he can stand/walk 2 hours and sit 6-8 hours. He must avoid concentrated exposure to vibration and extreme cold. In addition, the claimant will at least occasionally require 10 minutes or more added onto any or all normal work breaks (defined as the two 15-minute breaks and one 30-60 minute break during each 8-hour workday).

(A.R. 26.)

The ALJ found that from July 17, 2014 through April 28, 2016, Plaintiff was unable to perform any past relevant work, and that there were no other jobs Plaintiff could have performed. (A.R. 28-29.) The ALJ, therefore, determined Plaintiff was disabled from July 17, 2014 through April 28, 2016. (A.R. 29.)

The ALJ next followed the eight-step evaluation process to determine whether Plaintiff's disability continued through the date of his decision. (A.R. 29-32.) At the third step of the analysis, the ALJ found medical improvement had occurred as of April 29, 2016. (A.R. 29.) The ALJ cited a single treatment note in support of his conclusion. (*Id.*)

At the fourth step, the ALJ stated Plaintiff had the same RFC as noted above, except that beginning on April 29, 2016, "he no longer needs extra time off during the workday in addition to normal work breaks." (A.R. 30.) The ALJ stated the change in the RFC, which eliminated the requirement for extra work breaks, was supported by treatment records that showed "significant improvement

16

in [Plaintiff's] pain following his February 2016 right shoulder surgery." (A.R. 31.)

Based on the revised RFC, the ALJ found that as of April 29, 2016, Plaintiff was capable of performing his past relevant work as a loan processor and as an insurance reviewer. (A.R. 32.) Thus, the ALJ determined Plaintiff's disability ended April 29, 2016, and Plaintiff had not become disabled again after that date. (*Id.*)

## IV. DISCUSSION

Plaintiff argues the ALJ's finding that his condition "significantly improved" as of April 29, 2016 is not supported by substantial evidence. Plaintiff contends the medical evidence does not show that medical improvement had occurred, and the ALJ's reliance on a single physical therapy note was erroneous. The Court agrees.

In reaching his conclusion that Plaintiff's medical condition had improved, the ALJ cited one physical therapy note from April 29, 2016. The AJL stated "[t]he claimant's right upper extremity pain significantly improved by April 28, 2016, as demonstrated by his physical therapy note at 10F/22 [A.R. 836] (see above.)" (A.R. 29.) In an earlier part of the ALJ's decision, he also noted that in late April 2016, Plaintiff "reported getting some significant pain relief, including

17

no pain with cross-body reach and some pain-free days."[2] (*Id.*)

In isolation, the evidence the ALJ cited does suggest some medical improvement. But the ALJ is required to examine the evidence in the broader context of the claimant's impairments and the overall diagnostic record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). An ALJ is not permitted to cherry-pick from mixed results to support a denial of benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

The Court finds the ALJ took the April 28, 2016 physical therapy note out of the context of the treatment record as a whole. Although Plaintiff reported his shoulder was "feeling okay" on April 28, 2016, he contemporaneously indicated that there were times it "really aches" and he was using ice for pain relief. (*See* A.R. 836.) Therefore, on its face, the physical therapy note does not support a finding that Plaintiff's right shoulder pain was "significantly improved." Likewise, the treatment record indicating Plaintiff had no pain with cross-body reach is not evidence of "significant improvement." Prior to Plaintiff's surgery, Dr. Elliot

---

2 The ALJ attributed this treatment note to Plaintiff's physical therapist. The note, however, was actually from Plaintiff's treating physician, Dr. Elliot. (A.R. 838-39.)

18

noted Plaintiff's pain associated with cross-body reaching was only "minimal." (A.R. 817.) An improvement in a "minimal" level of pain associated with one movement does not evidence a "significant improvement" in overall pain.

In addition, the record indicates that Plaintiff's pain level before and after April 28, 2016 remained relatively constant. (*See* A.R. 821 (7/10 on February 25, 2016); 858 (8/10 on March 4, 2016); 852 (5/10 on March 17, 2016); 840 (8/10 April 21, 2016); 830 (5/10 on June 2, 2016).) In fact, on the *same day* as the physical therapy note, Plaintiff reported to Dr. Elliot that his pain was at a level 8/10. (A.R. 838.)

Finally, medical improvement must be more than temporary. Here, even though Plaintiff experienced times of reduced pain, and his shoulder was "feeling okay" on April 28, 2019, the improvement had to be sustained to be considered a medical improvement under 20 C.F.R. § 404.1594. "Improvement in such impairments that is only temporary will not warrant a finding of medical improvement." 20 C.F.R. § 404.1594(c)(3)(iv). On April 28, 2019, Plaintiff told Dr. Elliot that he "still has days when the pain is extensive, equal to the level he was having preoperatively." (A.R. 838.) Moreover, the treatment notes following the April 28, 2016 physical therapy show that Plaintiff's pain was recurring. On both May 5, 2016 and May 12, 2016, he reported increased soreness. (A.R. 832, 834.) Accordingly, the record does not support a finding that Plaintiff's

19

improvement was sustained.

When read as a whole and in context, the single physical therapy note and clinical observations cited by the ALJ do not show there was a "significant improvement" in Plaintiff's right shoulder pain. As such, the Court finds that the ALJ's finding of medical improvement as of April 29, 2016 is not supported by substantial evidence.

## V. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**IT IS ORDERED**.

DATED this 25th day of March, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge